# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MARK PIERCE, WILLIAM C. ENLOE, and
JILL COOK, TRINITY CAPITAL
CORPORATION and LOS ALAMOS
NATIONAL BANK,

       Plaintiffs,

vs.                                             Civ. No. 16-829 JAP/KBM

ATLANTIC SPECIALTY INSURANCE
COMPANY, FEDERAL INSURANCE
COMPANY, and CONTINENTAL
CASUALTY COMPANY,

       Defendants.[1]

## MEMORANDUM OPINION AND ORDER

On July 18, 2016, Atlantic Specialty Insurance Company (ASIC) removed to this Court

three consolidated cases from the First Judicial District Court in the County of Los Alamos

("consolidated state court proceeding").[2] NOTICE OF REMOVAL (Doc. No. 1).[3] The sole basis

for removal was federal question jurisdiction. *Id.* at 1 (citing 28 U.S.C. §§ 1331 and 1441(a)).

On July 19, 2016, ASIC filed DEFENDANT [ASIC'S] MOTION TO REALIGN

PARTIES, stating that while ASIC had removed the consolidated state court proceeding just one

---

[1] The Motions to Remand (Doc. Nos. 158, 225, 226, 227) contain case captions from the consolidated state court proceeding, but the Court uses the caption above with its alignment of the parties for purposes of convenience. The caption above, however, does not accurately reflect the caption of the consolidated state court proceeding. *See* Memorandum Opinion and Order entered June 9, 2017 (Doc. No. 278) (describing correct caption) and *see* discussion below.

[2] This case was reassigned to the undersigned Senior United States District Judge on May 19, 2017.

[3] At the time of removal on July 18, 2016, ASIC, Trinity Capital Corporation d/b/a Los Alamos National Bank (TCC/LANB), Federal Insurance Company (Federal), Travelers Indemnity Company aka St. Paul Mercury Insurance Company (Travelers/St. Paul), Continental Casualty Company (Continental), William C. Enloe, and Jill Cook had each been named as a Defendant in one or more cases of the consolidated state court proceeding. *See, e.g.,* Mr. Pierce's July 7, 2016 Amended Complaint (Doc. No. 63).

day earlier on the sole ground of federal question jurisdiction, ASIC believed that realignment of the parties was warranted "based upon their real (as opposed to their claimed) interests." ASIC Motion to Realign (Doc. No. 6). In the Motion to Realign, ASIC did not expressly argue that realignment of the parties would result in the Court having diversity jurisdiction as well as federal question jurisdiction, but that was the gist of ASIC's request for realignment. *See id.* at 2 (citing case law discussing realignment of parties in the context of removal based on diversity jurisdiction). ASIC's Motion to Realign Parties was fully briefed as of August 18, 2016.

On August 19, 2016, Continental filed DEFENDANT [CONTINENTAL'S] NOTICE OF ADDITIONAL GROUNDS FOR REMOVAL (Doc. No. 232), in which Continental expressly raised diversity jurisdiction as an additional basis for federal court jurisdiction. Also on August 19, 2016, Continental filed DEFENDANT [CONTINENTAL'S] MOTION TO REALIGN PARTIES (Doc. No. 233), arguing that complete diversity of citizenship between the parties would exist if the Court realigned the Insureds (TCC/LANB,[4] Enloe, Pierce, and Cook) as Plaintiffs and the Insurers (ASIC, Travelers/St. Paul, Continental, and Federal) as Defendants. *Id.* at 6. ASIC joined in Continental's Motion to Realign Parties (Doc. No. 236). However, LANB and the other "Insureds" gave notice they would not respond to Continental's Motion to Realign because it was filed in violation of the Court's earlier August 17, 2016 Order staying non-remand matters (Doc. Nos. 237–40). Continental's Motion to Realign Parties was not briefed.

The four Plaintiffs identified in the above caption each filed a Motion to Remand in August 2016: (1)  PLAINTIFF PIERCE'S MOTION TO REMAND TO STATE COURT (Doc. No. 158) (Pierce Motion to Remand); (2) [LANB'S] MOTION TO REMAND (Doc. No. 225) (LANB Motion to Remand); (3) JILL COOK'S MOTION TO REMAND (Doc. No. 226) (Cook

---

[4] Trinity Capital Corporation (TCC) owns Los Alamos National Bank (LANB). The Court will generally refer to TCC and LANB, collectively, as LANB or as TCC/LANB.

Motion to Remand); and (4) ENLOE'S MOTION TO REMAND (Doc. No. 227) (Enloe Motion to Remand).

In August 2016, ASIC filed separate responses to the four Motions to Remand: (1) DEFENDANT [ASIC'S] RESPONSE IN OPPOSITION TO PLAINTIFF MARK PIERCE'S MOTION TO REMAND (Doc. No. 223) and SUPPLEMENT TO DEFENDANT [ASIC'S] RESPONSE IN OPPOSITION TO PLAINTIFF MARK PIERCE'S MOTION TO REMAND (Doc. No. 228); (2) DEFENDANT [ASIC'S] RESPONSE IN OPPOSITION TO PLAINTIFF[ LANB'S] MOTION TO REMAND (Doc. No. 243); (3) DEFENDANT [ASIC'S] RESPONSE IN OPPOSITION TO PLAINTIFF WILLIAM ENLOE'S MOTION TO REMAND (Doc. No. 245); and (4) DEFENDANT [ASIC'S] RESPONSE IN OPPOSITION TO PLAINTIFF JILL COOK'S MOTION TO REMAND (Doc. No. 244).

On September 16, 2016, LANB, Ms. Cook, Mr. Pierce, and Mr. Enloe each filed a Reply in support of the Motions to Remand (Doc. Nos. 247, 249, 251, and 253).

On September 28, 2016, Continental requested leave to file a combined response to the four Motions to Remand, which was granted. *See* DEFENDANT [CONTINENTAL'S] RESPONSE TO REMAND ARGUMENTS BY PLAINTIFFS JILL COOK, MARK PIERCE, [LANB], AND WILLIAM ENLOE (Doc. No. 263) (Continental's Consolidated Response).

On October 19, 2016, LANB separately filed a reply to Continental's Consolidated Response in which Ms. Cook, Mr. Pierce, and Mr. Enloe joined (Doc. Nos. 265, 266, and 267). [LANB'S] REPLY TO DEFENDANT [CONTINENTAL'S] RESPONSE TO REMAND ARGUMENTS BY JILL COOK, MARK PIERCE, [LANB] AND WILLIAM ENLOE (Doc. No. 264) (LANB Reply to Continental's Consolidated Response).

## Background[5]

A. <u>Parties</u>

LANB is a national banking association organized under the National Bank Act, with its principal place of business in Los Alamos and with branch offices in White Rock, Santa Fe, and Albuquerque. TCC is the sole owner of the outstanding shares of LANB.

William C. Enloe served as Chief Executive Officer and as a member of the Board of Directors of both TCC and LANB at the time of the 2012 bank examination conducted by the Office of the Comptroller of the Currency (OCC). Mr. Enloe resigned his positions at TCC and LANB in February 2013.

Jill Cook formerly served as Senior Vice President and Chief Credit Officer for the Loan Department at LANB. In December 2012, LANB terminated Ms. Cook's employment.

Mark Pierce was a loan officer in LANB's loan department during the 2012 OCC examination. Mr. Pierce continued in that position until he tendered his letter of resignation on April 4, 2013.

OneBeacon Insurance Group (OneBeacon) is a Bermuda domiciled holding company that is publicly traded on the New York Stock Exchange. On May 1, 2012, OneBeacon issued LANB a Management and Professional Liability Insurance Policy with policy number 474-00-08-14-0003 for the period 5/1/12 to 5/1/13. The policy was placed with ASIC,[6] one of several insurance company subsidiaries of OneBeacon (hereafter, referred to as the ASIC policy). Coverage was renewed for the 5/1/13 to 5/1/14 policy year.

---

[5] Of the four Motions to Remand and briefing, the Court found LANB's descriptions of the factual and procedural background most helpful. LANB Motion to Remand at 2–11. Thus, the Court has borrowed liberally from LANB's Motion as to background information. Moreover, the Court has reviewed all of the briefing, none of which expressly challenged the background information set out in LANB's Motion to Remand. If material misstatements are made in the Background section of this Order, the parties may alert the Court of corrections with supporting citations.
[6] In its Notice of Removal and in other filings, ASIC states that it has been erroneously sued as Atlantic Specialty Insurance Company d/b/a One Beacon Insurance Company. *See* Doc. No. 1 at 1.

Travelers/St. Paul and Continental provided excess umbrella insurance coverage above the ASIC policy issued for the 5/1/12 to 5/1/13 policy period. LANB Motion to Remand at 2–4.

Federal provided excess umbrella insurance coverage above the ASIC policy issued for the 5/1/13 to 5/1/14 policy year. Federal also issued a primary "ForeFront Portfolio for Community Banks" insurance policy for the 5/1/14 to 5/1/15 policy year, when ASIC declined to renew its coverage for that policy year. *Id.*

### B. Insurance Policies

The ASIC policy is a specialty policy designed for financial institutions like LANB, and it provides coverage for a variety of risks and exposures typically faced in financial institutions. One such risk is the cost associated with responding to regulatory investigations. The ASIC policy defines a "claim" to include "a formal regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document." LANB Motion to Remand at 4. An "Insured Person" under the ASIC policy "means any past, present or future director, member of the board of trustees, officer, employee, etc." *Id.* The ASIC policy promises to pay on behalf of Insured Persons "loss" for which the Insured Persons are not indemnified by LANB. The ASIC policy also promises to pay on behalf of LANB a "Loss" for which LANB grants indemnification to Insured Persons.

The excess umbrella policies issued by Federal, Travelers/St. Paul, and Continental are "follow form" policies that provide the same coverage as the primary ASIC policies conditioned on exhaustion of the underlying policy limits.

### C. OCC and SEC Investigations[7]

> In 2012, the [OCC] conducted an examination of LANB as of June 30, 2012. The 2012 OCC examination found unsafe or unsound banking practices relating to management and board supervision,

---

[7] This section is quoted directly from LANB's Motion at 4–7, but does not include original footnotes.

credit underwriting, credit administration and deficiencies in internal controls. As a consequence, on November 30, 2012, LANB entered into a formal written agreement with the OCC in which LANB agreed to take certain actions to address and rectify the deficiencies uncovered in the 2012 OCC examination.

As a further consequence, the deficiencies identified by the OCC were ultimately determined to have resulted in Trinity and/or LANB misstating their financial condition and net income in filings with various federal regulatory agencies, including the OCC and United States Securities and Exchange Commission ("SEC"). On December 6, 2012, Trinity filed a Form 8-K Current Report with the SEC in which it disclosed the deficiencies uncovered by the 2012 OCC examination. That same day, LANB sent an e-mail to ASIC's claims department giving notice of circumstances that could give rise to a claim under the ASIC policy and attached copies of the November 30, 2012 OCC agreement and the December 6, 2012 8-K Current Report. ASIC did not acknowledge receipt of this notice until February 14, 2013 and then only advised that it would "simply reserve all rights and defenses under the policy provisions, and at law, with regard to future developments in the matter."

On or about December 8, 2012, an attorney for Jill Cook sent a letter to the President of LANB, demanding, *inter alia*, that LANB indemnify her for attorney fees she incurred in responding to the OCC investigation and a so-called "Fifteen Day Letter." LANB forwarded Ms. Cook's demand letter to ASIC's claims department on January 16, 2013 and ASIC acknowledged receipt of the demand letter and LANB's notice of claim on January 17, 2013.

In late 2012 or early 2013, the SEC opened an investigation captioned *In the Matter of Trinity Capital Corporation (D3320)*, which related to the circumstances surrounding the restatement of Trinity's financial statements following the 2012 OCC examination. Beginning in January, 2013, and continuing into 2014 and 2015, the SEC issued numerous subpoenas to Trinity, LANB and to various current and former officers, directors and employees of Trinity and LANB, requesting production of documents and in some instances, commanding the recipients to appear and give sworn testimony at the SEC's regional offices in Denver, Colorado. Copies of the subpoenas received in 2013 were forwarded to ASIC's claims department in December of 2013. [Additional subpoenas followed].

Mr. Enloe, Ms. Cook and Mr. Pierce have been targets of these ongoing regulatory investigations and had requested that LANB indemnify them for legal fees and costs incurred in responding to the investigations. LANB denied their requests because it determined that it was prohibited from indemnifying these individuals under the provisions of 28 U.S.C. part 359 and the New Mexico Business Corporations Act ….

On January 7, 2015, ASIC's claims adjuster advised LANB for the first time that ASIC was reserving its rights to deny coverage for the ongoing regulatory investigations on the basis that ASIC had not been provided adequate or timely notice of a claim or circumstances that could give rise to a claim during the 2012-2013 ASIC policy period. However, the ASIC claims adjuster did not accept or deny coverage but requested additional documents. On April 30, 2015, ASIC's claims adjuster sent a letter to counsel for Jill Cook denying coverage for Ms. Cook's claim for reimbursement of her defense costs in responding to the regulatory investigations. ASIC's denial of coverage was premised [on] LANB's alleged failure to give timely or adequate notice of claims or circumstances that could give rise to a claim during the 2012-2013 policy period.

LANB Motion to Remand at 4–7.

D.    Procedural History

1.  ***William C. Enloe's underlying lawsuits***

On May 11, 2015, Mr. Enloe filed an initial Complaint for Declaratory Relief Regarding Insurance and Indemnity Agreements against LANB and ASIC in the First Judicial District Court (County of Los Alamos) (D-132-CV-2015-00047) and on July 1, 2015, LANB removed D-132-CV-2015-00047 to federal court on the basis of federal question jurisdiction. Doc. No. 1–3 in Civ No. 15-567 WPL/KBM. On July 30, 2015, Mr. Enloe filed a Rule 41 Notice of Dismissal Without Prejudice of Civ. No. 15-567.

On September 1, 2015, Mr. Enloe filed a Complaint for Declaratory Relief, Breach of Insurance Contract, Insurance Bad Faith, Breach of the New Mexico Insurance Practices Act, and Negligence against ASIC, OneBeacon, Federal, and LANB in the First Judicial District

Court (County of Los Alamos) (D-132-CV-2015-00082). LANB states that unlike Mr. Enloe's initial and amended complaints that he filed in May 2015, this September 1, 2015 Complaint did not include a claim for indemnity against LANB. LANB Motion at 9 n.4.[8]

On October 7, 2015, Mr. Enloe filed a Verified Waiver and Disclaimer with prejudice disclaiming his right to pursue a declaratory judgment action against LANB to indemnify Mr. Enloe for fees related to the regulatory and enforcement litigation.

On October 15, 2015, the New Mexico Superintendent of Insurance accepted service on behalf of ASIC and OneBeacon. On November 16, 2015, ASIC and OneBeacon answered the September 1, 2015 Complaint.

On February 1, 2016, the First Judicial District Court in the County of Los Alamos entered an Order consolidating Mr. Enloe's lawsuit against ASIC, Federal, and LANB with LANB's lawsuit against ASIC, Federal, Enloe and Cook (see below). Thus, State Court Cause Nos. D-132-CV-2015-00082 and D-132-CV-2015-00083 were consolidated for all purposes and filings were entered in the lead case, D-132-CV-2015-00082. *See* Doc. No. 94 (attached state court filings).

On April 28, 2016, the First Judicial District Court in the County of Los Alamos entered a second Order of Consolidation upon LANB's unopposed motion, consolidating the three state court actions, i.e, the Enloe, LANB, and Pierce lawsuits (see below). Thus, State Court Cause Nos. D-132-CV-2015-00082, D-132-2015-00083, and D-101-CV-2015-0231 were all consolidated under the lead case, D-132-CV-2015-00082. The caption used for the consolidated cases included all three cases.[9]

---

[8] It does not appear from the state court proceedings that Mr. Enloe filed an amended complaint in May 2015, although he filed a First Amended Complaint on May 31, **2016**.
[9] For this reason, ASIC's caption in its Notice of Removal, realigning the parties as ASIC may seek for purposes of possible diversity jurisdiction, is inaccurate.

On May 31, 2016, Mr. Enloe filed a First Amended Complaint for Declaratory Relief, Breach of Insurance Contract, Insurance Bad Faith, Breach of the New Mexico Insurance Practices Act, and Negligence in the consolidated state court proceeding against ASIC, Federal, LANB, Travelers/St. Paul, and Continental in the First Judicial District Court in the County of Los Alamos. This is the first time Mr. Enloe named Travelers/St. Paul and Continental as Defendants. The Enloe First Amended Complaint is the operative Enloe Complaint in this removed action.

### 2. *LANB's Related Underlying Lawsuits*

On July 1, 2015, LANB filed in federal court a Complaint for Declaratory Relief, Bad Faith Breach of Insurance Contracts and Violations of the New Mexico Unfair Insurance and Unfair Trade Practices Act against ASIC, Federal, Mr. Enloe and Ms. Cook. Doc. No. 1 in Civ. No. 15-564 WPL/KBM. On September 1, 2015, LANB filed a Rule 41 Notice of Voluntary Dismissal Without Prejudice of CIV No. 15-564 WPL/KBM.

Also on September 1, 2015, LANB filed in the First Judicial District Court (County of Los Alamos) (D-132-CV-2015-00083) a Complaint for Declaratory Judgment, Bad Faith Breach of Insurance Contracts, and Violations of the New Mexico Unfair Insurance Practices Act and Unfair Trade Practices Act against ASIC, Federal, Mr. Enloe and Ms. Cook.

On September 22, 2015, counsel for ASIC entered an appearance and accepted service of the LANB state court action on behalf of ASIC. On October 22, 2015, ASIC filed its Answer in the LANB state court action.

On February 2, 2016, LANB and Mr. Enloe filed a Stipulated Motion to Dismiss all Declaratory Claims against Defendant [Enloe] Re Indemnification. *See* Doc. No. 186 (attached state court filings). This Stipulated Motion related to Mr. Enloe's October 7, 2015 disclaimer,

filed in Mr. Enloe's state court lawsuit, that there was no actual controversy under NMSA § 44-6-2 (Declaratory Judgment Act). Thus, LANB agreed to dismiss its claim for declaratory relief against Mr. Enloe as to indemnification. *See* Stipulated Order.

### 3. *Mark Pierce's Related Underlying Lawsuits*

On November 2, 2015, Mr. Pierce filed a "Complaint for Declaratory Relief on Coverage under an Insurance Policy or Policies, for Declaratory Relief on Employer's Duty to Indemnify Employee for Defense Costs Incurred in Defense of Authorized Actions Done in the Scope and Course of Employment Duties, and for Damages for Bad Faith Breach of Insurance Policy or Policies, for Common Law and/or Statutory Bad Faith by an Insurance Company or Companies, for Violations of the New Mexico Unfair Practices Act, and for Bad Faith Breach of Employer's Duty of Good Faith Indemnification under Respondent (sic) Superior Liability" against ASIC, LANB, and Federal in the First Judicial District Court (County of Santa Fe). (D-101-CV-2015-02381).

On November 25, 2015, Mr. Pierce filed an Amended Complaint (with the same title as above) against the same Defendants in the same state court. On February 22, 2016, ASIC filed its Answer.

As stated above, the First Judicial District Court (County of Los Alamos) consolidated the Enloe, LANB, and Pierce lawsuits on April 28, 2016.

On July 7, 2016, Mr. Pierce filed another Amended Complaint with a slightly different title than both the original Complaint and the (first) Amended Complaint. The July 7, 2016 pleading is identified as an "Amended Complaint for Declaratory Relief on Coverage Under an Insurance Policy or Policies and for Damages Resulting from Breach of Insurance Policy or Policies, Willful Breach of Insurer's Covenant of Good Faith, Violations of the New Mexico

Insurance Trade Practices and Frauds Act, and Violations of the New Mexico Unfair Trade

Practices Act" against the same Defendants in the First Judicial District Court in the County of

Los Alamos. The July 7th Amended Complaint was filed in the consolidated state court

proceeding and is the operative Pierce Complaint in this removed action.

### 4. *Jill Cook's Related Underlying Claims*

Ms. Cook did not file a lawsuit against any of the parties. Instead, in her January 8, 2016

Answer to LANB's Complaint (D-132-CV-2015-00083), Ms. Cook filed a Cross Claim against

ASIC and Federal. *See* Doc. Nos. 102–103 (attached state court filings). The Cross Claim

alleged, in part, that ASIC and Federal owed Ms. Cook a duty to defend and indemnify her for

costs related to the federal regulatory investigations of LANB. Cook Answer and Cross Claim

¶¶ 84, 92.

On February 3, 2016, Ms. Cook and LANB filed a Stipulated Motion to Dismiss all

Declaratory Claims against Defendant Jill Cook Re Indemnification, stating that Ms. Cook had

agreed not to pursue claims against LANB for defense and indemnity related to the federal

regulatory investigations. Ms. Cook and LANB stipulated and agreed that LANB's request for

declaratory relief regarding Ms. Cook could be dismissed, without prejudice. Doc. No. 187

(attached state court filings). On February 17, 2016, the First Judicial District Court in the

County of Los Alamos entered a corresponding Stipulated Order dismissing LANB's claim

regarding indemnification of Ms. Cook. *See* Doc. No. 136.

### 5. *ASIC's Removal of the Consolidated State Court Proceeding*

On July 18, 2016, ASIC filed its Notice of Removal relying on Mr. Pierce's July 7, 2016

Amended Complaint. ASIC states that it was served electronically with Mr. Pierce's Amended

Complaint on July 7, 2016 and that it filed the Notice of Removal within 30 days of receipt of

the Pierce Amended Complaint. Notice of Removal ¶¶ 2, 6. ASIC asserts that the July 7, 2016

Amended Complaint "raised for the first time allegations from which the defendant could

ascertain that the case had become removable pursuant to 28 U.S.C. § 1446(b)(3)." *Id.* ¶ 6. As

stated above, the sole basis for the removal was federal question jurisdiction. *Id.* ¶ 7.

### 6. *The SEC'S Related Complaint against Ms. Cook and Mr. Pierce*

The procedural history is a tangle of multiple lawsuits, numerous amended pleadings,

assorted removals, dismissed claims, and dismissed lawsuits; and, there is a dizzying number of

state court filings (Doc. Nos. 10–94, 96–137, 178–187, 195–210). In addition, ASIC alerts the

Court to another case that it contends is "directly related" to this proceeding, *SEC v. Jill D. Cook*

*and Mark C. Pierce*, CIV No. 15-864 MV/LF (*SEC Proceeding*), filed in federal court on

September 28, 2015. ASIC Response to LANB Motion to Remand at 10–11. *See* ASIC's

Supplement to its Notice of Removal (Doc. No. 211) (also notifying the Court of the *SEC*

*Proceeding*). According to ASIC, the *SEC Proceeding* was settled "conditioned upon SEC

approval of the terms of the settlement, and the case will be stayed indefinitely to accomplish the

approval process." ASIC Response at 11. The electronic docket in the *SEC Proceeding* indicates

that on March 29, 2016, the Court entered a Final Judgment as to Ms. Cook, and on January 23,

2017, a Final Judgment as to Mr. Pierce. Doc. Nos. 28, 54. Thus, the *SEC Proceeding* is closed

although each Final Judgment states that the Court retains jurisdiction to enforce the terms of the

Final Judgment. *Id.* There is nothing in the electronic docket about an indefinite stay.

### Summary of Positions in Motions to Remand and Responses[10]

A. <u>Motions to Remand</u>

---

[10] The Court does not recite every position raised by the parties in the briefing of the Motions to Remand. This section provides an overview of many of the arguments.

LANB presents three argument to support its Motion to Remand: (1) ASIC's removal was untimely; (2) ASIC's Notice of Removal is procedurally defective because it misrepresents the caption of the consolidated state court proceeding, does not include all of the parties to the consolidated cases, and was not consented to by all Defendants; and (3) ASIC's Notice of Removal fails to show the existence of a federal question. LANB Motion to Remand at 2. In its Reply, LANB countered ASIC's and Continental's contentions that diversity jurisdiction exists, by asserting both (1) that Continental's notice of diversity jurisdiction as grounds for removal was untimely and (2) that there is not complete diversity of citizenship between all Plaintiffs and all Defendants. LANB Reply at 8–9.

Arguments in the other Motions to Remand are similar. Although Mr. Pierce contends that the case caption used by ASIC is a "misrepresentation of the procedural facts," he requests remand on two grounds: (1) untimeliness of removal; and (2) lack of federal question jurisdiction. Pierce Motion to Remand at 1. In his Reply, Mr. Pierce further asserts that "[i]n most circumstances, . . . defendants may not add completely new grounds for removal[, i.e., diversity jurisdiction,] or furnish missing allegations . . ." to an earlier Notice of Removal. Pierce Reply at 10.

Mr. Enloe posits that ASIC's removal does not satisfy the requirements of 28 U.S.C. § 1446 because ASIC's removal was not timely, did not include copies of the entire state court record, did not reflect the consent of all co-defendants, and did not contain any statement of federal question jurisdiction. Enloe Motion to Remand at 6–23. Mr. Enloe also argues that ASIC's Notice of Removal improperly contains a "Motion" within the Notice which should have been addressed by separate motion.[11] *Id.* at 23–24. In his Reply, Mr. Enloe maintains that even

---

[11] ASIC subsequently filed a separate Motion to Realign Parties in addition to the "Motion" requesting realignment that it included in the Notice of Removal.

assuming ASIC's removal based on federal question jurisdiction was timely, ASIC and/or
Continental may not add a new basis for removal (diversity jurisdiction), because a "new ground
cannot be added now (post removal)" either by ASIC's response brief or by Continental's
additional removal notice. Enloe Reply at 10.

Ms. Cook claims that ASIC's removal was "procedurally deficient, untimely, and fails to
raise the requisite federal question necessary for this Court to retain jurisdiction." Cook Motion
to Remand at 1. She emphasizes ASIC's failure to obtain timely consent to removal from all co-
defendants. *Id.* at 2–5. In her Reply, Ms. Cook, similar to Mr. Pierce and Mr. Enloe, asserts that
"ASIC cannot now attempt to cure its improper and faulty removal by adding a completely new
ground for removal[]" and that CNA cannot now supplement ASIC's Notice of Removal on the
ground of diversity jurisdiction. Cook Reply at 10–11.

Responses to Motions to Remand

In response to the LANB Motion to Remand, ASIC holds that it acted timely in removing
the state court proceeding by filing its Notice of Removal on July 18, 2016, less than 30 days
after service of Mr. Pierce's July 7, 2016 Amended Complaint. ASIC Response to LANB
Motion to Remand at 4. According to ASIC, Mr. Pierce's July 7 Amended Complaint
"unambiguously implicated federal question jurisdiction." *Id.* ASIC asserts that Mr. Pierce's July
7 Amended Complaint "eliminated for the first time any 'doubt' regarding" the Court's federal
question jurisdiction. *Id.* at 5. In fact, ASIC maintains that "the contested federal issues in this
case are 'substantial.'" *Id.* at 13. More specifically, ASIC argues that the "nature and character of
the indemnity sought by each Plaintiff . . . will, by necessity, be analyzed and determined by this
Court based on the application of federal law and federal regulations . . . ." *Id.* at 19.

In addition, ASIC represents that all Defendants "properly denominated, joined[,] and served have consented to removal." *Id.* at 6. ASIC asserts that even if it did not attach every state court filing at the time of removal, that type of a procedural defect is not a ground to remand. *Id.* at 8.

Notwithstanding ASIC's removal based solely on federal question jurisdiction, ASIC argues that when the parties are properly aligned, diversity of citizenship will also confer jurisdiction on this Court. *Id.* at 3. Put differently, ASIC maintains that, based on Continental's Notice of Additional Grounds for Removal asserting complete diversity of citizenship, diversity jurisdiction "renders moot or otherwise trumps Enloe's Motion to Remand directed to federal question jurisdiction." *Id.* at 9. ASIC also contends that federal preemption of the area of law involving "federal banks and institution affiliate parties" supplies this Court with federal question jurisdiction. *Id.* at 3.

ASIC sets forth similar arguments in response to Mr. Pierce's Motion to Remand, e.g.,: (1) the coverage claims at issue are based on an interpretation of federal law; (2) the case was timely removed; and (3) this Court has jurisdiction of this case based on complete diversity of citizenship of the parties as realigned. ASIC Response to Pierce Motion to Remand at 2, 21. ASIC further states that Plaintiffs have judicially admitted that this Court has federal question jurisdiction, a position that the Court rejected in an earlier opinion.[12] *See also* ASIC Response to Enloe Motion to Remand at 3 (arguing diversity and federal question jurisdiction support removal as well as federal preemption in the area of law pertinent to deciding Plaintiffs' claims);

---

[12] In its June 9, 2017 Memorandum Opinion and Order, the Court determined that it would take judicial notice of LANB's statements in support of removing Mr. Enloe's first proceeding to federal court based on federal question jurisdiction, but the Court denied a request to judicially estop LANB from arguing that remand of this case was proper based on lack of federal question jurisdiction. Doc. No. 278.

ASIC Response to Cook Motion to Remand at 3 (setting out similar arguments in opposition to Cook Motion to Remand).

ASIC's Supplement to its Response to the Pierce Motion to Remand seeks to bring to the Court's attention yet another related proceeding. Supplemental Response at 2. ASIC says that after filing its Response to the Pierce Motion to Remand, ASIC learned that on September 26, 2013, TCC and the Federal Reserve Bank of Kansas City entered into a Written Agreement in Docket No. 13-028-WA-HC, an action pending before the Board of Governors of the Federal Reserve System, Washington, D.C. ("*Reserve Bank Proceeding*"). *Id.* ASIC interprets the Written Agreement in that case to support its assertion that federal questions abound in this proceeding and further claims that the "United States has a significant interest in the outcome of this litigation as it relates to this Court's interpretations of any indemnity obligations the parties may have with respect to one another . . . ." *Id.* at 3.

Continental filed a single Response to the four Motions to Remand. In its Consolidated Response, Continental primarily focuses on its "notice stating diversity jurisdiction as a basis for this Court's jurisdiction." *Id.* at 1. Continental takes the position that the Insureds have "missed the mark" in arguing that Continental's notice of diversity jurisdiction was untimely and an improper supplement to ASIC's Notice of Removal, and in arguing that complete diversity of citizenship is lacking. *Id.* For example, Continental maintains that its "removal notice" filed August 19, 2016, was timely because Continental received the full pleadings in the consolidated state court proceeding on July 21, 2016, at which time Continental was first able to ascertain grounds for removal based on diversity jurisdiction. *Id.* at 7–8. In its Reply to Continental's Consolidated Response, LANB disputes Continental's claim that its notice of removal was

timely and further asserts that Continental cannot establish complete diversity of citizenship between the adverse parties. LANB Reply to Continental Consolidated Response at 4, 8.

### Legal Standard

"A case originally filed in state court may be removed to [this] court if, but only if, 'federal subject-matter jurisdiction would exist over the claim.'" *Firstenberg v. City of Santa Fe*, 696 F.3d 1018, 1023 (10th Cir. 2012) (citation omitted). "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

A case may be removed to federal court on the basis of a federal question, i.e., "an action arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In addition, a case may be removed on the basis of diversity jurisdiction. The federal district court "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 … and is between citizens of different States…." 28 U.S.C. § 1332(a)(1).

Title 28 U.S.C. § 1446 governs the procedure to remove an action to federal court. It states in pertinent part that "[a] defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States … a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." 28 U.S.C. § 1446(a). A notice of removal must be filed–

> within 30 days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such

> initial pleading has then been filed in court and is not required to
> be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b)(1). However, "if the case stated by the initial pleading is not removable,"

the defendant must remove the action to federal court "within 30 days after receipt . . . of a copy

of an amended pleading, motion, order or other paper from which it may first be ascertained that

the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

Because federal courts are courts of limited jurisdiction, there is a presumption against

removal jurisdiction, which the defendant seeking removal must overcome. *See Dutcher v.*

*Matheson,* 733 F.3d 980, 984 (10th Cir. 2013). *See also Laughlin v. Kmart Corp*., 50 F.3d 871,

873 (10th Cir.), *cert. denied,* 516 U.S. 863 (1995), *abrogated on other grounds by Dart*

*Cherokee Basin Operating Co., LLC v. Owens,* 135 S.Ct. 547 (2014). In other words, the failure

to comply with the express statutory requirements for removal may render the removal defective

and require remand. *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1077 (10th Cir. 1999)

(citation omitted). "It is well-established that statutes conferring jurisdiction upon the federal

courts, and particularly removal statutes, are to be narrowly construed in light of our

constitutional role as limited tribunals." *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1094–95

(10th Cir. 2005). "All doubts are to be resolved against removal." *Fajen v. Found. Reserve Ins.*

*Co*., 683 F.2d 331, 333 (10th Cir. 1982). "The burden of establishing subject-matter jurisdiction

is on the party asserting jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).

**Discussion**

I.    Amendment of Removal Notice to Add Diversity Jurisdiction

Mr. Enloe, Mr. Pierce, and Ms. Cook each argue that neither ASIC nor Continental may

add diversity jurisdiction as a new ground for removal once the case was already removed on the

basis of federal question jurisdiction. *See* Enloe Reply at 10; Pierce Reply at 9; Cook Reply at

10. They cite legal authority in which Courts primarily addressed formal amendments of removal notices, which were filed after the expiration of the 30-day period for removal. *See, e.g., Fed. Nat'l Mortg. Ass'n v. Milasinovich*, 161 F. Supp. 3d 981, 1014 (D.N.M. 2016) (disallowing proposed amendment that was two years too late); *ARCO Envtl. Remediation, L.L.C. v. Dep't of Health and Envtl. Quality of the State of Mont.,* 213 F.3d 1108, 1117 (9th Cir. 2000) ("The Notice of Removal 'cannot be amended to add a separate basis for removal jurisdiction after the thirty day period.'").

In this case, ASIC and Continental did not formally move to amend the removal notice, and they both contend that they filed their removal notices within the 30-day period. There is authority for the proposition that parties may freely amend a removal notice before expiration of the 30-day period. *See, e.g., Zamora v. Wells Fargo Home Mortg.,* 831 F. Supp. 2d 1284, 1301 (D.N.M. 2011); 14C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3733 (3d ed. 1998) (notice of removal may be amended freely by defendant before expiration of 30-day period for seeking removal).

In *Zamora*, the Honorable James O. Browning remarked that "[w]hile it may not automatically follow that a defendant can assert a new basis of subject-matter jurisdiction to support removal as a matter of right within this thirty-day period, particularly when the facts or evidence supporting the new basis become available to the defendant following removal, a compelling case can be made to allow amendment." *Zamora*, 831 F. Supp. 2d at 1303 n.11. However, Judge Browning left that question for another day, and the Court has not located or been directed to any legal authority in the Tenth Circuit Court of Appeals or elsewhere that definitively resolves this question.

The Court need not decide whether Continental is permitted to add diversity jurisdiction as a basis for removal within the 30-day period for removal because the Court concludes that neither ASIC nor Continental filed timely removal notices. *See* discussion *infra*.

II.    Timeliness of Removals

    A.  *ASIC's Removal Based on Federal Question Jurisdiction*

        1.  *Background*

On July 18, 2016, ASIC filed its Notice of Removal based on federal question jurisdiction. ASIC contends that the Notice was timely because it was filed within 30 days of ASIC's receipt of Mr. Pierce's July 7, 2016 Amended Complaint.[13] Notice of Removal ¶¶ 2, 6. According to ASIC, Mr. Pierce's July 7, 2016 Amended Complaint "raised for the first time allegations from which [ASIC] could ascertain that the case had become removable pursuant to 28 U.S.C. § 1446(b)(3)." *Id.*¶ 6.

Mr. Pierce counters that ASIC should have "reasonably or intelligently 'first ascertained' the existence of the same federal question(s) it now raises no later than at least November 25, 2015, if not on September 1, 2015 or July 1, 2015." Pierce Motion to Remand at 7.

        2.  *Legal Standard*

The question of timeliness focusses on when ASIC was first able to ascertain that there were federal questions raised by the pleadings. *See* 28 U.S.C. § 1446(b)(3) ("… if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, … or

---

[13] ASIC sometimes refers to the Pierce July 7, 2016 Amended Complaint as the "Amended Complaint" (Doc. No. 1 ¶ 2) or as the "First Amended Complaint" (Doc. No. 223 ¶¶ 8, 11, 13). The Court clarifies that on November 2, 2015, Mr. Pierce filed his original Complaint against ASIC. On November 25, 2015, Mr. Pierce filed a [first] Amended Complaint but inadvertently omitted allegations to support his claims against Federal despite having named Federal as a Defendant. Pierce Motion to Remand at 7. Thus, the July 7, 2015 Complaint is actually Mr. Pierce's [second] Amended Complaint. For purposes of clarity, the Court refers to the [second] Amended Complaint as the July 7, 2016 Amended Complaint.

other paper from which it *may first be ascertained* that the case is one which is or has become

removable.") (emphasis added). Failure to file notice of the removal within the time set forth in

§ 1446(b) constitutes a defect in removal procedure, warranting a remand. *Huffman*, 194 F.3d at

1077.

 Under the well-pleaded complaint rule, "a suit arises under federal law 'only when the

plaintiff's statement of his own cause of action shows that it is based' on federal law." *Devon*

*Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc*., 693 F.3d 1195, 1202 (10th Cir. 2012)

(citations omitted). Thus, a federal defense, for instance, typically cannot satisfy the well-pleaded

complaint rule, and thus cannot create federal question jurisdiction. *Id*. at 1204. "[T]hough a

federal cause of action is not a necessary predicate for federal-question jurisdiction, a federal

question apparent on the face of the well-pleaded complaint is indispensable." *Nielsen v.*

*Archdiocese of Denver*, 413 F.Supp.2d 1181, 1185 (D. Colo. 2006) (citing *Rice v. Office of*

*Servicemembers' Group Life Ins*., 260 F.3d 1240, 1245 (10th Cir. 2001)).

 The Tenth Circuit Court of Appeals has determined that "'ascertained' as used in section

1446(b) means a statement that 'should not be ambiguous' or one which 'requires an extensive

investigation to determine the truth.'" *Akin v. Ashland Chem. Co*., 156 F.3d 1030, 1035 (10th

Cir. 1998) (citations omitted), *cert. denied,* 526 U.S. 1112 (1999). There is no duty to investigate

and determine removability where the initial pleadings are unclear. The Tenth Circuit instructs

that "clear and unequivocal notice from the pleading itself" or from other papers is required. *Id.*

at 1035–36.

 An amendment of the complaint will not revive the period for removal if the case

previously was removable but a defendant failed to exercise its right to do so. But, if an

amendment provides a new basis for removal or changes the character of the litigation so as to

make it substantially a new suit, a different result is reached. 14C Wright, Miller, Fed. Prac. & Proc. Juris. § 3731 (4th ed.).

    3. *Analysis*

In support of federal question jurisdiction, ASIC relies on Mr. Pierce's allegations of "his claims for insurance coverage [that] arise from actions instituted against him by the United States[,]" i.e., the OCC and SEC investigations into LANB's practices. ASIC Response to Pierce Motion to Remand at 1. According to ASIC, "Pierce's allegations against ASIC are predicated on whether certain actions of the [OCC] and/or the [SEC] regarding whether [LANB], a national banking association organized under the National Banking Act [] and its directors and/or officers violated United States banking laws in the handling of loans for home mortgages, amount to covered 'Claims' under the insurance policy in question." *Id.* at 2. ASIC represents that the coverage determination must be made in reference to interpretations of federal statutes and federal regulatory provisions. *Id.* at 2, 5.

In addition, ASIC relies on allegations in the *SEC Proceeding* to support federal question jurisdiction. *Id.* at 3. Further, ASIC notes the Written Agreement entered on September 26, 2013 in the *Reserve Bank Proceeding.* Doc. No. 228–1.

ASIC specifies that the following allegations found in Mr. Pierce's July 7, 2016 Amended Complaint support removal based on a federal question:

> a. "Plaintiff's claims for a declaration of coverage for covered losses, and related relief … are related to certain [federal] regulatory proceedings conducted or commenced against [LANB], which proceedings include a regulatory investigation … in the aftermath of the 2007-2008 home mortgage scandal and collapse …" (citing ¶ 7 of Pierce July 7, 2016 Amended Complaint).

> b. "Among the unintended consequences was an unprecedented increase in regulatory proceedings and investigations conducted by the OCC and the SEC." (*id.* ¶ 10).

c.  The OCC investigated LANB's banking practices and found "certain
    deficiencies in LANB's banking practices." (*id.* ¶ 13).

d.  The OCC found that LANB engaged in unsafe or unsound banking
    practices. (*id.* ¶ 16).

e.  LANB and OCC entered into formal agreements, necessitating LANB
    to file a Form 8-K Current Report with the SEC "disclosing the
    deficiencies" identified (sic) the agreement the (sic) reached. (*id.*
    ¶¶ 14–18).

f.  In late 2012 or early 2013, LANB was notified that the "OCC and/or
    SEC was about to commence, or had already commenced, formal
    regulatory proceedings against [it.]" (*id.* ¶ 19).

g.  In late 2012, the SEC filed a formal proceeding against LANB during
    which the SEC issued numerous subpoenas to dozens of current and
    former LANB officers, directors and employees and to give sworn
    testimony at the SEC's regional office in Denver, Colorado. (*id.*
    ¶¶ 20–22).

h.  [ASIC] sells insurance products and services to banking institutions,
    and its management liability policies are "mutually intended to protect
    banking institutions and their managing officers against the cost of
    defending *regulatory proceedings* instituted by the OCC or SEC[.]"
    (emphasis added by ASIC) (*id.* ¶ 23).

ASIC Notice of Removal at ¶ 11a–h.

ASIC also contends that not until it reviewed the above-stated allegations in Mr. Pierce's

July 7, 2016 Amended Complaint, could ASIC first ascertain that three federal questions arose in

the removed consolidated cases. Notice of Removal ¶ 13(a–c). According to ASIC, those three

questions all involved determinations of whether certain "activities" pertaining to the federal

agency investigations of LANB and of its employees met the definitions of specific insurance

policy language so as to trigger coverage under ASIC's policy. ASIC maintains that the

resolution of these insurance coverage questions "necessarily depend on an analysis and

determination of Plaintiffs' allegations in light of the applicable federal law . . . ." *Id.* ¶ 13.

23

Mr. Pierce argues that all of these same or similar allegations appeared in his November 25, 2015 [first] Amended Complaint, in Mr. Enloe's September 1, 2015 Complaint against ASIC, et al., in LANB's September 1, 2015 Complaint against ASIC, et al., and/or in Jill Cook's Cross Claim against ASIC. Pierce Motion to Remand at 7–8 (citing Doc. Nos. 10–13, 61–62, 67–68, and 102–03) (attached state court pleadings). Mr. Pierce explicitly lays out the paragraph numbers of the many different allegations from all of these Complaints and from Ms. Cook's Cross Claim which are similar to Mr. Pierce's July 7, 2016 allegations on which ASIC relies. Notice of Removal ¶ 11a–h. Pierce Motion to Remand at 7–9.

The Court carefully compared each allegation in Mr. Pierce's July 7, 2016 Amended Complaint that was cited as support for federal question jurisdiction by ASIC with the multiple allegations in Plaintiffs' earlier Complaints and in Ms. Cook's earlier Cross Claim. The Court concludes, without doubt, that the allegations upon which ASIC relies for federal question jurisdiction, as set out in Mr. Pierce's July 7, 2016 Amended Complaint, are found either verbatim, or in spirit, or both, in the earlier Complaints filed and served on ASIC by Mr. Pierce, Mr. Enloe, and LANB, and in the Cross Claim filed against ASIC by Ms. Cook.

For example, in support of removal, ASIC cites an allegation in Mr. Pierce's July 7, 2016 Amended Complaint addressing Mr. Pierce's claims for a declaration of coverage for losses related to certain federal regulatory proceedings conducted against LANB in the aftermath of the 2007–2008 home mortgage scandal and collapse. *See* allegations set out above and in ASIC Notice of Removal ¶ 11(a). In Mr. Enloe's September 1, 2015 Complaint, Mr. Enloe alleged that he was suing ASIC and the other defendant insurers for failing to provide a defense in connection with threatened civil money penalties following two related regulatory investigations in reference to LANB banking practices. Enloe September 1, 2015 Complaint at 1–2. Mr. Enloe

submitted that his Complaint arose as the "New Mexico economy declined in the aftermath of the financial crisis of 2008 and the ensuing global recession," when LANB and other community banks experienced an increase in classified loans and a decrease in collateral values supporting parts of loan portfolios. *Id.* ¶ 12. Mr. Enloe stated that late in 2012 into the first quarter of 2013, LANB learned that "two federal regulatory agencies" were contemplating commencement of regulatory investigations into LANB's practices. *Id.* ¶ 13. *See id.* ¶¶ 12–18, 47–51, 53, 55–60, 69–79 (other allegations regarding the SEC and OCC investigations of LANB and Mr. Enloe's request for insurance coverage). *See also* LANB's September 1, 2015 Complaint against ASIC, et al. ¶¶ 15–30, 51–64, 66–68 (making similar allegations about the "global financial crisis of 2007–2008, the SEC and OCC investigations into LANB's banking practices, LANB employees' and directors' claims for insurance coverage, and LANB's notices of potential claims submitted to ASIC regarding the results of the federal agency investigations); Mr. Pierce's November 25, 2015 Amended Complaint ¶¶ 12–13, 53–63 (including allegations pertaining to the OCC and SEC investigations and findings of deficiencies with LANB's banking practices as well as allegations that Mr. Pierce sought insurance coverage for his expenses incurred in responding to the investigations); Ms. Cook's January 8, 2016 Cross Claim against ASIC and other insurers ¶¶ 11–31 (same).

In this Order, the Court will not go through each of the eight allegations from Mr. Pierce's July 7, 2016 Amended Complaint that ASIC contends supports federal question jurisdiction because virtually all of those allegations flow from the investigations that the OCC

and the SEC conducted at LANB in 2012 and 2013.[14] Suffice to say that the earlier filed Complaints by Mr. Pierce, Mr. Enloe, and LANB and the earlier filed Cross Claim by Ms. Cook are all replete with similar allegations about the federal agency investigations, the findings of the OCC and the SEC, the agreements as to corrective actions LANB was to take, the issuance of subpoenas to many current and former LANB officers, directors, and employees during the investigations, and these parties' requests for insurance coverage. *See* Pierce Motion to Remand at 8–9 (setting out paragraph numbers of earlier allegations by Mr. Pierce, Mr. Enloe, Ms. Cook and LANB). Thus, if ASIC was alerted to the possible presence of a federal question by the specified allegations in Mr. Pierce's July 7, 2016 Amended Complaint, that was not the first time ASIC should have known about the possibility of a federal question. Based on a thorough review of the pleadings, the Court concludes that ASIC could have "first ascertained" the presence of a federal question at least as early as the Fall of 2015, if not in the Summer of 2015, when LANB removed Mr. Enloe's earlier proceeding to federal court based on federal question jurisdiction.

Moreover, the Court finds it telling that in the four Responses to the Motions to Remand, *see* Doc. Nos. 223, 243, 244, 245, ASIC never attempted to refute or even address Mr. Pierce's citations to similar allegations in his earlier filed Complaint, in the earlier filed Complaints by Mr. Enloe and LANB, and/or in the earlier filed Cross Claim by Ms. Cook. This is true notwithstanding similar arguments raised by Mr. Enloe, Ms. Cook, and LANB in their Motions to Remand. *See* Pierce Motion to Remand (Doc. No. 158, at 7–10); Enloe Motion to Remand

---

[14] The one exception is the allegation that ASIC "sells insurance products and services to banking institutions, and its management liability policies are 'mutually intended to protect banking institutions and their managing officers against the cost of defending regulatory proceedings instituted by the OCC or SEC[.]" Notice of Removal ¶ 11(h). The Court does not know why this would alert ASIC "for the first time" that a federal question existed. After all, ASIC issued the pertinent insurance policy to a banking institution. And, the policy defines a covered claim to include "a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document" and further provides that an insurer will pay on behalf of an insured person for losses that are not indemnified by the financial institution and that the insured person was legally obligated to pay. *See* LANB Motion to Remand at 4; ASIC Policy.

(Doc. No. 227, at 6–8); Cook Motion to Remand (Doc. No. 226, at 14–18); LANB Motion to Remand (Doc. No. 225 at 14). *See also* Enloe Reply at 3–6 (detailing eight instances when ASIC received notice of a possible federal question, starting with LANB's federal question removal of the earlier Enloe complaint in July 2015); LANB Reply at 3–5 (ASIC was "unequivocally on notice of the potential for federal question removal more than a year before it filed its notice of removal"); Cook Reply at 5 (noting "substantially identical allegations" in the three earlier pleadings).

Instead of specifically responding to these arguments, [15] ASIC argues only that a defendant need not "investigate the necessary jurisdictional facts within the first 30 days of receiving an original, indeterminate complaint." ASIC further contends that it was not necessary to mention "'any of the federal questions' in response to an Original Complaint that, on its face, does not affirmatively manifest them." ASIC Responses (Doc. Nos. 223 ¶¶ 11–14, 243 ¶¶ 8–10, 244 ¶¶ 8–10, 245 ¶¶ 8–10). In other words, ASIC appears to take the position that the earlier filed complaints and allegations concerning the very same SEC and OCC investigations were somehow ambiguous or equivocal, while Mr. Pierce's July 7, 2016 Amended Complaint was a watershed moment. ASIC's argument falls flat.

The Court acknowledges that a defendant need not investigate and determine the removability of a pleading that indicates an equivocal existence of a right of removal. *DeBry v. Transamerica Corp.*, 601 F.2d 480, 489 (10th Cir. 1979). But here, the earlier pleadings by LANB, Mr. Enloe, Mr. Pierce, and Ms. Cook, from July 2015 through January 2016, are

---

[15] By not responding to Plaintiffs' argument that earlier pleadings and filings alerted ASIC to a removable issue, ASIC has abandoned raising any contention that the earlier pleadings failed to apprise it of a federal question. *See Maestas v. Segura*, 416 F.3d 1182, 1190 n. 9 (10th Cir. 2005) (plaintiffs abandoned claims "as evidenced by their failure to seriously address them in their briefs"). Indeed, in ASIC's Responses to the Motions to Remand, ASIC implies that it may relinquish an argument that federal question jurisdiction exists based on ASIC's position that diversity jurisdiction exists and trumps Mr. Enloe's Motion to Remand directed to federal question jurisdiction. *See, e.g.,* ASIC Response to LANB Motion to Remand at 9 ("Diversity of citizenship … arguably renders moot or otherwise trumps Enloe's Motion to Remand directed to federal question jurisdiction.")

substantially similar to Mr. Pierce's July 7, 2016 allegations on which ASIC relies for notice of a federal question.

Furthermore, although ASIC summarily asserts that the issues about insurance coverage necessarily implicate federal statutes, the Court did not locate any references by ASIC to specific federal laws that would aid in answering the pertinent insurance coverage questions. Moreover, ASIC's position about the coverage questions that "necessarily" implicate federal laws is belied by Daniel Ryan's April 30, 2015 letter in which Mr. Ryan, who is OneBeacon/ASIC's Assistant Vice President of Claims, admitted the OCC and the SEC investigations began on December 3, 2012 and that the subpoenas or notices served thereafter constituted a "Claim" or part of a series of interrelated claims under the terms and definitions of ASIC's policy. April 30, 2015 Letter (Doc. No. 158–4). Although Mr. Ryan contended that the insureds had not timely noticed ASIC of their claims, Mr. Ryan made no mention of any pertinent federal laws that assisted him in his extensive "Coverage Analysis" describing policy definitions. *Id.* at 5–9.

The Court concludes that the July 2015 through January 2016 pleadings discussed above provided clear and unequivocal notice to ASIC that the consolidated state court proceeding was removable on the basis of a federal question. In other words, ASIC could have "intelligently ascertained removability" as early as July 2015, and no later than January 2016. *See Huffman,* 194 F.3d at 1078. Therefore, ASIC's July 18, 2016 Notice of Removal was filed well outside the 30-day removal window, which constitutes a defect in removal warranting remand.[16]

---

[16] To the extent that ASIC may argue it was unable to intelligently ascertain the removability of the consolidated state court proceeding until ASIC learned of other related federal proceedings, e.g., the *SEC Proceeding* (Doc. No. 211) and/or the *Reserve Bank Proceeding* (Doc. No. 228), the Court is not persuaded. This is because the Court has concluded that ASIC was given unequivocal notice of the removability of the consolidated state court proceeding as early as July 2015 and no later than January 2016.

B. *Continental's Notice Adding Diversity Jurisdiction*

Because the Court has declined to reject a defendant's general right to amend a notice of

removal to add a new basis for jurisdiction under certain circumstances, *see* discussion *supra*, the

Court must determine if Continental's removal based on diversity jurisdiction, filed August 19,

2016, was timely. Continental's Notice of Additional Grounds (Doc. No. 232). Thus, the

question is when could Continental first intelligently ascertain that the consolidated state court

proceeding was removable on the ground of diversity jurisdiction.

1. *Background*

All four Motions to Remand argue that federal question jurisdiction is lacking. The initial

Motions to Remand do not address diversity jurisdiction removal requirements because the

Motions were all filed before Continental added diversity jurisdiction as a ground for removal.

Thus, only the Replies in support of the Motions to Remand discuss whether Continental's

removal was timely. (Doc. No. 253 at 6; Doc. No. 247 at 9; Doc. No. 249 at 11). The other

pertinent filings are Continental's Consolidated Response to the Motions to Remand (Doc. No.

263) and LANB's Reply to Continental's Consolidated Response. (Doc. No. 264).

Continental claims that its August 19, 2016 removal notice was timely because it was

filed within 30 days of July 21, 2016, "when Continental received the full pleadings in the

consolidated state court proceeding after ASIC filed the same into the docket of this case."

Continental Consolidated Response at 7. LANB argues that Continental could have intelligently

ascertained support for diversity jurisdiction from Mr. Enloe's May 31, 2016 First Amended

Complaint that Continental admits it received on June 9, 2016.[17] LANB Reply at 4–8.

Continental disagrees and asserts that Mr. Enloe's May 31, 2016 First Amended Complaint did

---

[17] It appears that Continental was served with Mr. Enloe's May 31, 2016 First Amended Complaint on June 9, 2016,
although Continental states that the First Amended Complaint was served "on or about June 6, 2016." Continental
Consolidated Response at 8.

not allege the amount in controversy. Continental Consolidated Response at 8. Thus, according

to Continental, Mr. Enloe's May 31, 2016 First Amended Complaint did not provide it with

sufficient information to support removal based on diversity jurisdiction.

### 2. *Legal Standard*

Diversity jurisdiction requires complete diversity of citizenship and an amount in

controversy that exceeds the sum or value of $75,000. 28 U.S.C. § 1332(a)(1). "[I]f the case

stated by the initial pleading is not removable, a notice of removal may be filed within 30 days

after receipt by the defendant, through service or otherwise, of a copy of an amended pleading,

motion, order or other paper from which it may first be ascertained that the case is one which is

or has become removable." 28 U.S.C. § 1446(b)(3). As stated above, with respect to the pertinent

statutes regarding removal jurisdiction, the same presumptions against federal court jurisdiction

apply. Removal statutes are strictly and narrowly construed, and the defendant bears the burden

of showing that removal jurisdiction exists. *See* discussion of legal standard *supra,* pp. 17–18.

Regarding the requirement that a defendant must show that the plaintiff seeks an amount

in controversy that exceeds the sum or value of $75,000, a removing defendant may rely on an

estimate of damages in the complaint. *McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir.

2008). In addition, the Court may consider a claim for punitive damages and/or for statutory

attorneys' fees in determining the requisite jurisdictional amount. *Woodmen of World Life Ins.

Soc'y v. Manganaro*, 342 F.3d 1213, 1218 (10th Cir. 2003).

### 3. *Analysis*

Continental's primary basis for asserting that Mr. Enloe's May 31, 2016 First Amended

Complaint did not provide it with sufficient information regarding diversity jurisdiction is that

Mr. Enloe neglected to allege the amount in controversy.[18] Continental Consolidated Response at 8. According to Continental, Mr. Enloe did not allege the amount of his insurance claim and did not allege the amounts sought by other Insureds. *Id.* at 8–9. Continental further explains that its pertinent policy is a "second-layer excess insurance policy that attaches after exhaustion of a five million dollar primary policy issued by ASIC and a five million dollar first-layer excess policy issued by [Travelers/]St. Paul." *Id.* at 8. So, essentially, Continental takes the position that the jurisdictional amount in controversy could not have been met until it was established that the Insureds sought more than ten million dollars (in accordance with the five million dollar primary policy issued by ASIC and a five million dollar first-layer excess policy issued by Travelers/St. Paul). *Id.*

Continental represents that only after reviewing pleadings of Mr. Pierce, Ms. Cook, and LANB in the consolidated state court proceeding and the pleadings in the *SEC Proceeding*, could it state in good faith that the total defense costs at issue would satisfy the $75,000 jurisdictional minimum. *See id.* at 9. ("It was not until Continental reviewed these other pleadings that it ascertained that defense costs could exceed $10 million.").

Notably, Continental does not identify any specific pleadings in the various proceedings that finally alerted it that the jurisdictional amount might be satisfied. Generally, Continental states that given its "excess position," it could not have reasonably appreciated the amount in controversy until it received information about the number and nature of the other claims at issue. *Id.* at 9. Apparently after reviewing certain unspecified pleadings from the consolidated state court proceeding, Continental learned that the Insureds sought coverage for the legal fees

---

[18] Continental does not take the position that Mr. Enloe's May 31, 2016 First Amended Complaint failed to show complete diversity of citizenship, at least in terms of how Continental (and ASIC) seek to realign the parties. But, LANB and other Plaintiffs argue that diversity of citizenship is lacking because there is an "actual, justiciable controversy between Enloe and LANB" which should defeat an argument that complete diversity of citizenship exists. *See* LANB Reply at 12.

and costs they incurred in defending the various regulatory proceedings. *Id.* Continental also asserts that the jurisdiction minimum was satisfied after it learned of "the number of law firms that likely were involved in the regulatory proceedings and the length of time those proceedings were underway." *Id.*

Mr. Enloe's May 31, 2016 First Amended Complaint states under its "Preliminary Statement" that as a result of the insurance carriers' failure to pay for legal counsel for Mr. Enloe in connection with the regulatory investigations of LANB, Mr. Enloe "was forced to retain his own legal counsel and ***spend hundreds of thousands of dollars to defend himself*** during the regulatory proceedings." Enloe May 31, 2016 First Amended Complaint, at 2 (emphasis added). Mr. Enloe alleged that the regulatory proceedings began in about 2012 and extended through part of 2015. *See id.* ¶¶ 14, 16. Mr. Enloe also submitted that "current and former officers, directors, and employees (including Enloe) required reimbursement" for legal fees and expenses incurred in defending the two regulatory investigations. *Id.* ¶ 18.

In the May 31, 2016 First Amended Complaint, Mr. Enloe set forth claims of breach of the New Mexico Insurance Practices Act, intentional breach of insurance contract, insurance bad faith, fraudulent concealment and/or constructive fraud, breach of the New Mexico Unfair Trade Practices Act (UPA), and negligence. Mr. Enloe sought awards of compensatory and punitive damages, treble damages under the UPA, and statutory attorney's fees. *See id.* ¶¶ 145, 162 and p. 34 ¶ B. While a defendant is under no duty to investigate the potential grounds for removal, it would not have taken much investigation, if any, to see that many law firms were involved in the consolidated state court proceeding. Moreover, Mr. Enloe alleged that dozens of individuals with LANB had been subpoenaed by the SEC and OCC and were possibly claiming costs of defense and related expenses. *Id.* ¶¶ 79–82.

The Court acknowledges Continental's argument that the jurisdictional minimum was not met until Continental knew there were claims exceeding ten million dollars. In support, Continental cites *Salazar v. GEICO Ins. Co.*, No. 10-cv-0118 JB/RLP, 2010 WL 2292930 (D.N.M. Apr. 27, 2010), and *Wheeler v. Farmers Ins. Exch.*, No. 13-cv-0951, 2013 WL 4432097 (W.D. La. Aug. 16, 2013), *adopted by* 2014 WL 280356 (W.D. La. Jan. 22, 2014). Continental Consolidated Response at 9.

To the extent applicable, neither case is published and neither is binding precedent. Moreover, both cases are distinguishable. In *Salazar*, the available policy limit was equal to, but not in excess of $75,000. *See Salazar* at *8. Moreover, unlike this case, the plaintiffs in *Salazar* did not bring a claim for bad faith or for punitive damages. *Id.* at *9.

In *Wheeler*, the insurer had refused to settle a claim against its $50,000 uninsured/under-insured motorist policy. *Wheeler*, at *1. The plaintiff argued that remand was appropriate since the $75,000 jurisdictional minimum was not met. The Louisiana District Court observed that if a policy's limits were below the jurisdictional threshold, "the fact that a claimant's actual damages are an amount above [the threshold] does not increase the amount in controversy." *Id.* at *2. The insurance company argued that the Court should consider the first $50,000 of damages it covered along with the additional $50,000 that the plaintiff sought. *Id.* The Court, in *Wheeler*, found that the plaintiff's demand for the entire $50,000, and his extensive medical costs, the need for shoulder surgery, rehabilitation, and reported pain and suffering were sufficient to show that the entire $50,000 policy was at stake. *Id.* at *3. The Court further noted that the plaintiff requested statutory penalties but not an award of statutory attorney's fees. *Id.* at *4. Under those circumstances, the *Wheeler* Court remanded, having determined that the insurance company did not satisfy its burden in removing the case. *Id.* at *5.

The Court finds that the decision in *Wheeler* sheds no light on the analysis of when Continental first could have reasonably or intelligently ascertained that this case was removable based on diversity jurisdiction or that the jurisdictional minimum had been met. Unlike the facts in *Wheeler*, this case does not involve allegations that Mr. Enloe may not have met the $75,000 jurisdictional minimum or that he may have failed to satisfy that minimum by $25,000 or less. Mr. Enloe alleged that he was forced to spend "hundreds of thousands of dollars" to defend himself. He seeks awards of statutory damages, treble damages, and punitive damages, and in addition, attorney's fees. This is sufficient to meet the jurisdictional minimum required for removal based on diversity jurisdiction. *See* 28 U.S.C. § 1332(a). While there may be cases, *see, e.g., Hartford Ins. Grp. v. Lou–Con Inc*., 293 F.3d 908, 911 (5th Cir. 2002), where a court has found that an insurance policy limit will establish the amount in controversy, it does not necessarily follow that an insurer can only intelligently ascertain that a case may be removed upon the triggering of an insurer's excess insurance policy, i.e., only after a plaintiff seeks an award of over $10 million. Moreover, Continental has not identified case law from the Tenth Circuit Court of Appeals or any Circuit Court of Appeals that stands for the proposition that a defendant could not have intelligently known that a case is removable based on diversity jurisdiction unless or until an insurer's excess insurance policy is triggered. That argument is frivolous in light of the clear statutory requirements of diversity jurisdiction under 28 U.S.C. § 1332(a).

Therefore, the Court concludes that Continental should have known that this case was removable based on diversity jurisdiction by about June 9, 2016 when it was served with Mr. Enloe's May 31, 2016 First Amended Complaint. Mr. Enloe's May 31, 2016 First Amended Complaint provided clear and unequivocal notice to Continental that the jurisdictional minimum

was met. Continental then had 30 days from about June 9, 2016 to file a notice of removal. As a result, Continental's August 19, 2016 removal notice was filed outside the 30-day removal window, which constitutes a defect in removal warranting remand.[19]

In sum, the Court's decision to remand with respect to ASIC's removal based on federal question jurisdiction or Continental's removal based on diversity jurisdiction is consistent with principles that federal courts are courts of limited jurisdiction and that statutes conferring jurisdiction upon federal courts, particularly removal statutes, are to be narrowly construed. *Zambrano v. New Mexico Corrections Dep't*, __ F. Supp. 3d __ (June 1, 2017), 2017 WL 2628920, at *2 (citations omitted). Moreover, neither ASIC nor Continental has overcome the presumption against removal jurisdiction. *See id.* Thus, having resolved all doubts against removal, as it must, the Court concludes that the untimely removals require remand. Accordingly, the Motions to Remand filed by Mr. Pierce (Doc. No. 158), LANB (Doc. No. 225), Ms. Cook (Doc. No. 226), and Mr. Enloe (Doc. No. 227) will be granted.

III.   <u>Additional Procedural Defect with Notice of Removal</u>

Title 28 U.S.C. § 1446(b)(2)(A) provides that when a civil action is removed solely under § 1441(a), "all defendants who have been properly joined and served must join in or consent to the removal of the action." "To join a notice of removal is to support it in writing." *Vasquez v. Americano U.S.A.*, 536 F. Supp. 2d 1253, 1258 (D.N.M. 2008) (addressing removal based on diversity jurisdiction) (citations omitted). While all defendants are not required to sign the same notice of removal, each defendant "must independently and unambiguously file notice of its consent to join in the removal within the thirty-day period." *Id.* (citations omitted). This requirement, which is not onerous, "serves the policy of insuring the unanimity necessary for

---

[19] Because the Court concludes that Continental's diversity jurisdiction removal was untimely, the Court will not address the motions for realignment since those motions presume that diversity jurisdiction was proper.

removal." *Id.* (citation omitted). "It is insufficient for the removing defendant, in its notice of removal, to represent that all other defendants consent to removal." *Id.* (citations omitted). And, "[o]ne defendant's attempt to speak on behalf of another defendant will not suffice." *Id.* (citation omitted). In *Vasquez*, the Honorable District Court Judge William Johnson adopted the majority view, finding that the "defendants who [did] not sign the actual notice of removal [were required to] file an independent and unambiguous notice of consent to join in the removal." *Id.* at 1259. The Court, in *Vasquez*, having determined that the removal was defective, remanded the case to state court. *Id.*

Although ASIC included the captions of the consolidated state court proceeding in the body of its Notice ¶ 1, reflecting actions brought against ASIC, Federal, LANB, Mr. Enloe, and Ms. Cook, ASIC did not obtain the consent of LANB, Mr. Enloe, or Ms. Cook to removal based on ASIC's assertion that the "putative [insurance] coverage issue against [ASIC] is unique, separate and independent from the claims against the other defendants." *Id.* ¶ 18 ("Only Consent of Movant Needed"). Notwithstanding ASIC's position that the co-defendants were not required to consent to removal, ASIC, "in an abundance of caution," filed a Notice, on behalf of Federal on July 21, 2016 (Doc. No. 95), on behalf of Continental on August 8, 2016 (Doc. No. 177), and on behalf of Travelers/St. Paul on August 15, 2016 (Doc. No. 222), stating that these three insurers did not object to removal and consented to removal.[20]

The notices that ASIC filed on behalf of other served co-defendants are defective. None of the co-defendants identified by ASIC filed independent notices of consent to or joinder in removal. In fact, ASIC argued, without citing any supporting case law, that only its consent to removal was required. Notice of Removal ¶ 18. Although ASIC filed separate notices of consent

---

[20] On May 31, 2016, Mr. Enloe had filed a First Amended Complaint, for the first time naming as Defendants Travelers/St. Paul and Continental.

on behalf of the co-defendants, the consent of one defendant on behalf of a co-defendant does not necessarily bind the allegedly consenting defendant. S*ee Vasquez*, 536 F. Supp. 2d at 1258. Consistent with the notion that removal procedures are strictly construed and enforced in favor of remand, *see id.,* the Court finds that this procedural defect in ASIC's Notice of Removal serves as an additional basis to grant the Motions to Remand.[21]

Because the Court finds that remand is appropriate based on the untimely notices of removal and also because ASIC's Notice of Removal was defective, the Court does not address additional arguments in support of remand.

IV.    Request for Attorney's Fees and Costs

Title 28 U.S.C. § 1447(c) provides that an order remanding a case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp*., 546 U.S. 132, 141 (2005). Although a party does not need to demonstrate bad faith to justify an award of costs and fees under § 1447(c), there must be a showing that the removal was improper *ab initio. Suder v. Blue Circle, Inc.*, 116 F.3d 1351, 1352 (10th Cir. 1997)

LANB, Mr. Pierce, Mr. Enloe, and Ms. Cook all ask for an award of attorney's fees and costs with respect to ASIC's removal. *See, e.g.,* Pierce Motion to Remand at 24–25. Mr. Pierce contends that ASIC's Notice of Removal was made for an improper purpose, "to harass, cause unnecessary delay, [and] needlessly increase the cost of litigation" and that the allegations "of

---

[21] Continental's removal notice does not suffer from this same defect. While Continental's removal notice was untimely, thereby requiring remand, Continental stated that it had been authorized to represent that Travelers/St. Paul consented to removal based on diversity jurisdiction. Doc. No. 232 at 7 n.3. And, co-defendants ASIC and Federal filed independent and unambiguous notices of consent or joinder in Continental's removal. Doc. Nos. 234, 235.

federal question jurisdiction [] were blatantly untimely, not 'warranted by existing law,' and without any evidentiary support" in violation of Rule 11(b). *Id.* at 24. According to Mr. Pierce, the removal of this case was "improper *ab initio.*" *Id.* (citation omitted). *See also* Pierce Reply at 10.

LANB's Reply to Continental's Consolidated Response asks for an award of attorney's fees with respect to Continental's removal notice. LANB argues that Continental did not have "a fair basis for removing this case on August 19, 2016" because any removal was due more than five weeks earlier. Doc. No. 264 at 10.

The Court concludes that both ASIC and Continental missed the 30-day removal window either by many weeks or months. Thus, at the point ASIC and/or Continental filed their removal notices, neither party had an objectively reasonable basis for removal, which was improper *ab initio*. For example, ASIC's position that it first ascertained removability as of the date of Mr. Pierce's July 7, 2016 Amended Complaint is without basis and unreasonable in view of the many earlier pleadings that should have alerted ASIC to the possibility of federal question removal. Similarly, Continental's argument that it could not determine that the jurisdictional minimum was met until Continental learned that the Insureds sought over $10 million in damages is frivolous in light of clearly established law that a removing party typically must show that a claim exceeds the sum of $75,000 for purposes of establishing diversity jurisdiction. As noted above, ASIC's removal was flawed by an additional defect with respect to obtaining proper consent of the co-defendants.

As a result of these findings and the Court's decision to grant the Motions to Remand, the Court will award LANB, Mr. Enloe, Mr. Pierce, and Ms. Cook their just costs and actual expenses, including attorney's fees, in accordance with 28 U.S.C. § 1447(c). The Court will

require LANB, Mr. Pierce, Mr. Enloe, and Ms. Cook each to file an Affidavit of costs and fees

incurred as a result of the improper removals by no later than August 10, 2017. ASIC and

Continental will each have until August 25, 2017, to file a response to the Affidavits. Each of the

Affidavits and Responses should not exceed seven (7) pages.

IT IS ORDERED that, for the reasons stated herein:

1)  )  PLAINTIFF PIERCE'S MOTION TO REMAND TO STATE COURT (Doc. No.

    158) is GRANTED;

2)  LANB'S MOTION TO REMAND (Doc. No. 225) is GRANTED;

3)  JILL COOK'S MOTION TO REMAND (Doc. No. 226) is GRANTED;

4)  ENLOE'S MOTION TO REMAND (Doc. No. 227) is GRANTED;

5)  Attorney's fees and costs will be awarded in favor of LANB, Mr. Pierce, Mr. Enloe,

    and Ms. Cook against ASIC and Continental. LANB, Mr. Pierce, Mr. Enloe, and Ms.

    Cook each must file an Affidavit by August 10, 2017, stating the fees and costs each

    party incurred with respect to the removal. ASIC and Continental may each file a

    response in opposition to each affidavit by August 25, 2017; and

6)  this consolidated state court proceeding (D-132-CV-2015-00082) will be

    REMANDED to the First Judicial District Court in the County of Los Alamos, State

    of New Mexico, after this Court rules on the requests for attorney's fees and costs.


_____

SENIOR UNITED STATES DISTRICT JUDGE